Pfeifer, J.,
dissenting.
{¶ 36} A man is dead over a bag of groceries.
{¶ 37} We cannot know what was going on in Paul Niskanen’s mind as he entered the Rootstown Giant Eagle, whether he intended to purchase or purloin the products he would place in his shopping cart. If Niskanen intended to shoplift from the get-go, surreptitiousness was not his modus operandi. He filled his shopping cart and went through a checkout lane; the cashier rang up a total of $289.02 of groceries. When the cashier asked him for his Giant Eagle Advantage card (a customer discount and rewards card), Niskanen told her that *495 he would have to go out to his car to get it. When he returned inside the store without it, the cashier suggested that he go to the customer service area to get a replacement card. Niskanen did so. He gave the customer service representative his own name; although she could not find his name in the database (even though Niskanen had been issued a Giant Eagle Advantage card), she issued him a temporary card. When he returned to the checkout lane, the cashier was busy with another customer. Then, Niskanen left the store with his cart, and began to unload grocery bags into his car, which was parked in the fire lane adjacent to the store.
{¶ 38} After Niskanen had placed just one bag of groceries in his car trunk, John Maczko, the store manager, emerged from the store and yelled, “Stop the shoplifter!” to Jonathan Stress, another employee who happened to be in the parking lot. Niskanen had had enough: he closed his trunk and ran toward the driver’s door of his car, leaving the bulk of his $289.02 worth of groceries abandoned in his shopping cart. Niskanen made no threats: his only apparent desire was to leave the area. But Giant Eagle employees set upon him. Niskanen reacted to their aggression.
{¶ 39} Self-defense should not have been available as an affirmative defense to Giant Eagle in this case. The majority rightly recognizes that “to the extent that the trial court offered the self-defense instruction for [the negligent-failure-to-train] claim, it erred.” I disagree, however, with the majority’s conclusion that this error was harmless. The jury found that placing blame in this case was a tight call, attributing 60 percent of the proximate cause to Niskanen and 40 percent to Giant Eagle. The jury’s belief that Giant Eagle had self-defense available to it as an affirmative defense could easily have played a pivotal role in assigning the ultimate percentages.
{¶ 40} I further dissent from the majority’s conclusion that self-defense was relevant to Niskanen’s claim for undue restraint. The only relevant question for the jury was whether, given the facts of this particular situation, Giant Eagle employees detained Niskanen in a reasonable manner and for a reasonable length of time. The physical altercation occurred because Giant Eagle employees attempted to detain Niskanen. Niskanen’s physical response to that attempted detention would be relevant for the jury in determining the reasonableness of the employees’ methods. But it does not give rise to a self-defense instruction. A jury instruction on self-defense was superfluous, contradictory, and confusing; the right of store employees to proactively detain a suspected shoplifter under B..C. 2935.041 is at odds with the reactive nature of self-defense. The trial judge’s instruction conflated reasonableness of restraint and self-defense. The defense to a claim of undue restraint is that the degree of restraint employed was reasonable. Giant Eagle did not require another legal excuse, self-defense, to try *496 to legitimize its role in this tragedy. The court of appeals correctly ordered a new trial.
Hahn, Loeser & Parks, L.L.P., Steven A. Goldfarb, Robert J. Fogarty, and Eric B. Levasseur, for appellee.
Marcus & Shapira, L.L.P., Bernard D. Marcus, Scott D. Livingston, and Stephen S. Zubrow; and Rademaker, Matty, McClelland & Greve and Robert C. McClelland, for appellant.
Davis & Young and Richard M. Garner, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.
Linda S. Woggon, urging reversal for amicus curiae Ohio Chamber of Commerce.
Vorys, Safer, Seymour & Pease, L.L.P., Richard D. Schuster, and Michael J. Hendershot, urging reversal for amici curiae Ohio Council of Retail Merchants and Ohio Grocers Association.
{¶ 41} When Niskanen attempted to leave the Giant Eagle premises, Giant Eagle personnel had his name. They had easy access to his license plate number. They had most of the goods Niskanen had placed in his shopping cart. Niskanen could have been prosecuted for petty theft, a first-degree misdemeanor. The sentence for a first-degree misdemeanor is no more than 180 days of confinement. Instead, Niskanen paid with his life. For one bag of groceries.